UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| NANETTE P.,[1] | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-01960-TWP-DLP |
| | ) |
| NANCY A. BERRYHILL, Deputy Commissioner | ) |
| for Operations, Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff, Nanette P. ("Claimant"), requests judicial review of the final decision of the Deputy Commissioner for Operations of the Social Security Administration (the "Deputy Commissioner"), denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the decision of the Deputy Commissioner.

## I. BACKGROUND

### A. Procedural History

In April 2014, Claimant filed an application for DIB, alleging a disability onset date of November 1, 2013. (Filing No. 8-5 at 2.) Her claim was initially denied on July 1, 2014, and again upon reconsideration on September 10, 2014. Claimant filed a written request for a hearing on September 24, 2014. On April 7, 2016, a video hearing was held before Administrative Law Judge Paul R. Armstrong (the "ALJ"). (Filing No. 8-2 at 50-82.) On April 12, 2016, the ALJ

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

denied Claimant's application for DIB. *Id.* at 9-23. Claimant requested review of the decision by the Appeals Council, which denied her request. *Id.* at 2-7.

**B.      Factual Background**

At the time of her alleged disability onset date in November 2013, Claimant was 51 years old. She is a high school graduate. Her last employment was at a nursing home in September 2014. ([Filing No. 8-2 at 56](#).) She worked as a registered floor nurse and then, when she was physically unable to do that job, at a desk job in the same facility. *Id.* at 56-57.

**1.      Medical Evidence**

Claimant's physical difficulties began in June 2005, following an accident while riding an all-terrain vehicle ("ATV"). In that accident and in the days following it, she suffered multiple left-sided rib fractures, left frontal contusion, bilateral carotid dissection with right-sided stenosis, a left pleural effusion, anemia, depression, and right anisocoria. Claimant spent twenty days in the hospital. Thereafter, she was out of work for six months recovering from the accident, but was eventually able to return and worked from early 2006 through September 2014.

Following the accident Claimant reported chronic back and shoulder pain, which was treated with the medication Lyrica and Duragesic patches for several years. The patches were affordable when she was working due to her insurance but became unaffordable once she stopped working in 2014. After Claimant could no longer afford Duragesic patches, her doctor started her on methadone to treat her pain.

In March 2014, Claimant saw Michael Knox, M.D., ("Dr. Knox"), complaining of chest and rib pain. Dr. Knox changed Claimant's medication regimen, decreasing an Oxycodone prescription and prescribing Gabapentin and Baclofen for pain relief. ([Filing No. 8-9 at 54](#).) She

followed up with Dr. Knox in May 2014 and he again adjusted her prescriptions. She saw Dr. Knox again in July 2014, and he rated her pain a five out of ten.

In June 2014, Patrick Doolan, M.D. ("Dr. Doolan") examined Claimant. She explained to Dr. Doolan that she could walk between one half and one whole city block and that she could lift and carry fifteen pounds. (Filing No. 8-9 at 81.) Dr. Doolan found that she had normal posture, a limp in her right leg, stable station, steady heel and toe walk, steady tandem walk, and normal straight leg raising in seated and supine positions. *Id.* at 82-84. Claimant also had full strength, normal muscle tone, no atrophy, no weakness, normal motor functioning, normal sensory responses, normal grip strength, normal fine motor functioning, and normal gross motor functioning. *Id.* at 84. Her range of motion was normal in her upper and lower extremities but slightly below normal in her spine. *Id.* at 85.

In July 2014, state agency physicians reviewed Claimant's medical records and opined that her physical impairment was severe but her mental impairment was not. (Filing No. 8-3 at 7.) The physicians determined she could lift up to twenty pounds occasionally, ten pounds frequently, could sit for six hours, stand and walk for six hours, and occasionally perform postural movements but should avoid concentrated exposure to heights. *Id.* at 9-10. They determined "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given [Claimant's] age, education, and [residual functional capacity]." *Id.* at 11. The state agency physicians reviewed Claimant's records again in September and offered the same opinions. *Id.* at 4-24.

2. **Hearing Before the ALJ**

In April 2016, a hearing was held before the ALJ at which Claimant appeared via videoconference and was represented by counsel. (Filing No. 8-2 at 50.) She testified that she last

worked in September 2014 as a Licensed Practical Nurse specializing in geriatrics. *Id.* at 56. She was terminated when a resident of the nursing home made a false accusation about her. After the resident recanted the false statement, the nursing home asked Claimant to return, but she felt physically unable to work. *Id.* at 56-57. She attempted to work a desk job at the nursing home, but had double or blurry vision, which rendered her unable to work. *Id.* at 57.

Claimant testified regarding the ATV accident in 2005. *Id.* at 58. Following the accident, she had rib fractures, thoracic fractures, double vision, a closed head injury, short term memory loss, a stroke, partial third nerve palsy of the right eye, and dissection of both carotid arteries. *Id.* She was able to lift twenty pounds once per day, she walked with a slight limp, and she could walk roughly a quarter mile before needing to stop and rest. *Id.* at 59. She can drive her truck, go shopping for groceries, and do laundry, but she does not cook meals. *Id.* at 61-62. She cannot sit comfortably long enough to watch a movie at the theater. *Id.* at 62-63.

Claimant testified that she could lift five pounds a couple of times an hour, but repetitive lifting would increase her pain. *Id.* at 67. She could walk for five minutes, but then would need to stop and rest for two to three minutes. *Id.* at 68. She could stand for five minutes at a time and sit for forty minutes at a time. *Id.* She was able to watch a two-hour movie and concentrate enough that she could relay the plot to someone who had not seen the movie. *Id.* at 69. She did not read books because of her blurry vision but could read the newspaper and watch news programs on television. *Id.* at 70.

David Van Winkle, a vocational expert (the "VE"), testified at the hearing. *Id.* at 71-79. He testified that Claimant's impairment prevented her from returning to her previous work as a licensed practical nurse because that job required her to give primary care to patients, which sometimes required her to lift or move them. *Id*. at 72-73. The VE testified that there are "light"

4

jobs that require the same skill set without the heavy lifting, primarily medical assistant, that Claimant could do with her impairment. *Id.* at 73-74. There is also light, unskilled work that Claimant could do, including the jobs of retail sales attendant, cashier, and office helper. *Id.* at 74-75.

## II.  DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If a claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold

the ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.  THE ALJ'S DECISION

The ALJ first determined that Claimant met the insured status requirement of the Act through December 31, 2018. ([Filing No. 8-2 at 12](Filing No. 8-2 at 12).) The ALJ then began the five-step sequential evaluation process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since November 1, 2013, the last day she worked at her most recent job. *Id.* at 14. At step two, the ALJ found that Claimant had the following severe impairments: residuals of the 2005 ATV accident including thoracic degenerative disc disease and residual pain from rib fractures. *Id.* At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15-16.

The ALJ then determined that Claimant had the RFC to perform work under certain conditions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. To the claimant's credit, she had a very good work history prior to her onset date (Exhibit 4D). However, the claimant has been able to work since 2005, when the accident that caused her pain happened (Exhibit 1F/4, Exhibit 4D). Also, the claimant collected unemployment after her onset date, which shows the claimant was looking for work, and held herself out as able to work after the date she alleges she became disabled (Exhibit 5D). Importantly, tests showed the claimant walks unassisted, and otherwise has normal physical functioning (Exhibit 8F. Notably, the record is absent a disabling medical source statement from an acceptable medical source (*See* Exhibit 1F-12F). Additionally, the record shows conservative psychological treatment (*See* Exhibit 1F-12F). Lastly, the claimant is still able to perform activities of daily living such as cleaning, laundry, visiting her mother and taking care of her finances (Exhibit 6F). The above factors show that the claimant's impairments are not disabling.

….

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

([Filing No. 8-2 at 17, 19](Filing No. 8-2 at 17, 19).)

At step four, the ALJ determined that Claimant was unable to perform any of her past relevant work. *Id.* at 18-19. At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant could perform such as a retail worker, cashier, and office helper. *Id.* Having found that Claimant could perform work in other jobs in the economy, the ALJ determined that she was not disabled. Therefore, the ALJ denied Claimant's application for DIB.

## IV. DISCUSSION

In her request for judicial review, Claimant asserts one error: the ALJ failed to articulate a sufficient explanation under the Social Security Ruling ("SSR") 16-3p[2] two-step analysis for the

---

[2] SSR 16-3p, 81 Fed. Reg. 14166-01 (March 16, 2016) is a Social Security Ruling. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration in accordance with 20 C.F.R. § 402.35(b)(1) and are to be relied upon as precedents in adjudicating other cases.

evaluation of her subjective statements about her symptoms. (Filing No. 10 at 16.) Under SSR 16-3p, "[f]irst, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p. Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

SSR 16-3p came into effect on March 28, 2016, roughly two weeks before the ALJ issued his ruling in this case. SSR 16-3p rescinded SSR 96-7p with the primary change being that ALJs are now required to assess a claimant's subjective symptoms without evaluating a claimant's credibility. *Id.* The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' characters; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Claimant first takes issue with the ALJ's conclusion that, while the symptoms she complains of are likely caused by her impairments, Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Filing No. 8-2 at 17.) Claimant argues this statement is "legally insufficient and not supported by substantial evidence." (Filing No. 10 at 18.)

Second, Claimant argues that the ALJ relied too heavily on his finding that Claimant is able to walk unassisted. *Id.* at 19-21. Claimant asserts the ability to walk unassisted does not translate into the ability to walk for an entire six- to eight-hour work day. Claimant argues that

9

Dr. Knox, who treated her in 2014, should have been asked by the ALJ to make a statement for the record. *Id.* at 20. And because Dr. Doolan, who also treated Claimant after her onset date, did not properly make a medical source statement, the ALJ had a duty to request more information from him.

And last, Claimant argues that the ALJ relied too heavily on her ability to complete activities of daily living such as cleaning, laundry, visiting her mother and taking care of her finances. *Id.* at 21. According to Claimant, the ALJ ignored her assertion that she could only do those activities in short bursts, which would not translate to the ability to work a full-time job. *Id.*

The Deputy Commissioner responds that although the ALJ did not cite directly to SSR 16-3p in his decision, he adhered to its directives by abandoning the use of the terms "credible" and "credibility" and evaluating Claimant's symptoms and their impact on her ability to work according to the regulations at 20 C.F.R. § 404.1529. ([Filing No. 13 at 9](#).) The Deputy Commissioner noted that the ALJ did acknowledge Claimant's testimony that she was disabled from thoracic degenerative disc disease and rib impairment; that she has difficulty standing for more than five minutes, lifting more than five pounds, or sitting more than 40 minutes; and that she must lie down several times per day. ([Filing No. 8-2 at 16](#).) The ALJ contrasted those assertions with medical evidence in record, which indicated that Claimant could walk unassisted and was at full strength. *Id.*

After a careful review of the parties' arguments and the ALJ's written decision, the Court determines that the ALJ did not run afoul of SSR 16-3p. When evaluating a claimant's symptoms, SSR 16-3p requires an ALJ to use a two-step process. 81 Fed. Reg. at 14167. The first step asks whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *Id.* The ALJ completed this step, answering that

10

"the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms". (Filing No. 8-2 at 17.)

SSR 16-3p's second step requires an ALJ to evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. 81 Fed. Reg. at 14168. In doing so, an ALJ must first consider objective medical evidence and then, if that does not yield an answer, must consider other evidence, specifically the individual's statements, other medical sources, other non-medical sources, and the factors set forth in 20 C.F.R. § 404.1529(c)(3) and 416.929(c)(3).[3] *Id.* at 14169-72. Finding no conclusive answer in the objective medical evidence, the ALJ considered other evidence, including Claimant's testimony about her symptoms and impairment, medical opinions contained in the record from Dr. Knox, Dr. Doolan, and the state agency doctors, and Claimant's ability to perform activities of daily living. (Filing No. 8-2 at 16-17.)

SSR 16-3p allows claimants to make statements about the "intensity, persistence, and limiting effects of his or her symptoms." 81 Fed. Reg. at 14169. An ALJ will "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and [he] will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* The ALJ fulfilled both aspects of this mandate. He considered Claimant's

---

[3] Those factors include:
(1) daily activities;
(2) the location, duration, frequency, and intensity of pain or other symptoms;
(3) factors that precipitate and aggravate the symptoms;
(4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
(5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
(6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
(7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

81 Fed. Reg. at 14169-70.

testimony and summarized it in his decision. ([Filing No. 8-2 at 16](Filing No. 8-2 at 16).) He then evaluated whether that testimony was consistent with the medical evidence in the record and concluded it was not. Despite Claimant's claims that she was unable to walk for more than five minutes without resting, the ALJ found "the record shows unassisted walking and full strength." *Id*. He cited Dr. Doolan's report, which said that Claimant had full strength, a steady heel and toe walk, a steady tandem walk, a stable station, normal fine motor strength, and normal grip strength. *Id.* at 17.

The ALJ also considered non-medical evidence and found that evidence supported a conclusion that Claimant was not disabled. That evidence included the nine-year delay between the ATV accident that caused Claimant's injuries and her alleged disability onset date, the fact that Claimant was looking for work after her alleged disability onset date, and her ability to perform activities of daily living. *Id.* SSR 16-3p requires ALJs to consider this type of non-medical evidence if the objective medical evidence does not yield a conclusive determination regarding the intensity, persistence, and limiting effects of a claimant's symptoms.

According to SSR 16-3p, an ALJ is more likely to find a claimant's symptoms unlikely to reduce that claimant's ability to work if the claimant's statements about her symptoms are not consistent with objective medical evidence or other evidence in the record:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are *consistent* with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are *more likely* to reduce his or her capacities to perform work-related activities…. In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are *inconsistent* with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are *less likely* to reduce his or her capacities to perform work-related activities….

81 Fed. Reg. at 14170 (emphasis added). Here, the ALJ determined that Claimant's statements regarding the severity of her symptoms were inconsistent with medical evidence in the record, and

thus he believed those symptoms were less likely to reduce Claimant's ability to perform work-related activities.

The ALJ did not make a written determination that Claimant was not credible, that she malingered, or that she misrepresented her symptoms. He merely noted that Claimant's testimony was not consistent with medical evidence in the record and chose to give the medical evidence greater weight than Claimant's testimony. As required by SSR 16-3p, the ALJ stated his reasons for giving the medical evidence greater weight than Claimant's testimony as the long delay between her accident and the date she claims she became disabled, and the fact that she could still perform activities of daily living. (Filing No. 8-2 at 17.) That weighing is within the ALJ's discretion, and the Court defers to that discretion unless the ALJ was patently wrong. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Claimant makes two other arguments: (1) that the ALJ relied too heavily on his finding that Claimant was able to walk unassisted, and (2) that the ALJ relied too heavily on his finding that Claimant was able to perform activities of daily living. (Filing No. 10 at 19-21.) These findings come from medical evidence in the record and from Claimant's testimony at the hearing. Because objective medical evidence did not conclusively reveal the severity and persistence of Claimant's symptoms, the ALJ was entitled to use this evidence to determine whether Claimant was capable of work-related activity. The Court does not find that the ALJ was patently wrong in considering these two pieces of evidence and giving them great weight.

Because the ALJ followed SSR 16-3p, and because his decision was supported by evidence and contained no legal errors, the Court will not reverse and remand the Deputy Commissioner's determination.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Deputy Commissioner is **AFFIRMED.** Claimant's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 11/29/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov